# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| REV. PEARCE EWING,<br><br>*On Behalf of Himself and All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>NEWPORT GROUP, INC., SYMETRA FINANCIAL CORPORATION, REV. DR. JEROME V. HARRIS, AFRICAN METHODIST EPISCOPAL CHURCH, AND JOHN DOES 1-10,<br><br>Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Reverend Pearce Ewing, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Newport Group, Inc., Symetra Financial Corporation, Rev. Dr. Jerome V. Harris, and African Methodist Episcopal Church, a not-for-profit 501(c)(3) corporation ("AMEC"), and alleges the following:

### INTRODUCTION

1. This suit arises out of the breach of fiduciary duties and negligent conduct of the Defendants in managing the AMEC Pension Fund ("Fund"). This class action seeks recovery on behalf of AMEC ministers and other employees who,

collectively, have lost millions of dollars due to Defendants' misconduct and mismanagement of the Fund.

2. Plaintiff and the members of the class (collectively, "Plaintiffs") are ministers and other employees of AMEC who have lost retirement funds that were invested in the Fund.

3. The Defendants in this action are each responsible for Plaintiffs' massive losses.

4. Defendants require that a specified portion of a minister's salary each pay period be invested into the Fund. Defendants oversaw and controlled the investments and did not adequately monitor or oversee the Fund.

5. As detailed below, Defendants directly owed duties to Plaintiffs, including fiduciary duties, to conduct due diligence, monitor investments, and oversee and audit the Fund, in order to assure that that the Fund was protected and that Plaintiffs had access to their retirement funds.

6. The loss to Plaintiffs' assets is a direct and proximate result of Defendants' failure to fulfill their duties to Plaintiffs.

## PARTIES

7. Plaintiff Reverend Pearce Ewing is a resident of Jacksonville, Duval County, Florida. Rev. Ewing served as an AMEC minister for many years and retired in September 2021. Shortly after his retirement, he sought to access monies due him from the Fund.

8. Defendant Newport Group, Inc. is a Florida corporation with its

2

headquarters in Walnut Creek, California.

9. Defendant Symetra Financial Corporation was incorporated, and is existing, under the laws of the state of Delaware. It maintains its headquarters in Bellevue, Washington.

10. Defendant Rev. Dr. Jerome V. Harris served as the Executive Director of the AMEC Department of Retirement Services until 2021.

11. Defendant AMEC and specifically the Department of Retirement Services, which oversees the Fund. Defendant AMEC was incorporated, and is existing, under the laws of the state of Pennsylvania as a not-for-profit 501(c)(3) corporation. AMEC's principal place of business and its headquarters are in Nashville, Tennessee. The Department of Retirement Services maintains its principal place of business and headquarters in Memphis, Tennessee.

12. Defendants John Does 1-10 are affiliates or subsidiaries of Defendants here that may be responsible for the conduct alleged herein. Such parties are named in a "John Doe" capacity pending discovery in this case.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C 1331(d). The amount in controversy exceeds $5,000,000 and there are members of the proposed Class who are citizens of a State different from the State of citizenship of Defendants.

14. This Court may exercise personal jurisdiction over Defendants because Defendants conduct substantial business in this State, including conducting Fund

3

business within the Western District of Tennessee, and have engaged in the unlawful practices described herein in this District.

15. Venue is proper in this District under 28 U.S.C. 1391(b) because (1) Defendants reside and are subject to the Court's personal jurisdiction in this District and (2) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**FACTUAL ALLEGATIONS**

### I.  History of the AMEC

16. The African Method Episcopal ("AME") denomination grew out of the Free African Society, which was established in Philadelphia in 1787.

17. In 1794, the first AMEC was dedicated in Bethel and Richard Allen (a founding member of the Free African Society) was made pastor.

18. To establish independence from interfering white Methodists, Allen successfully sued in the Pennsylvania courts in 1807 and 1815 for the right of his congregation to exist as an independent institution.

19. Because other Black Methodists in middle Atlantic communities encountered racism and desired religious autonomy, Allen called them to meet in Philadelphia to form a new Wesleyan denomination, the AME.

20. Prior to the Civil War, the geographical spread of the AMEC was mostly in the Northeast and Midwest, with major congregations established in Philadelphia, New York, Boston, Pittsburgh, Baltimore, Washington, DC, Cincinnati, Chicago, Detroit, and other large Blacksmith's Shop cities.

21. The denomination reached the Pacific Coast in the early 1950's with churches in various cities in California.

22. During the Civil War and Reconstruction, AMEC membership boomed as AME clergy moved into the states of the collapsing Confederacy. By 1880, membership reached 400,000 because of AME's rapid spread below the Mason-Dixon line.

23. Today, AMEC has membership in 20 Episcopal Districts in 39 countries on 5 continents. The work of the Church is administered by 21 active bishops and nine General Offices who manager departments of the Church. AMEC requires its ministers to contribute to the Fund. A percentage of the minister's salary is required to be contributed to the Fund each pay period.

24. The current Executive Director of the Department of Retirement Services is Rev. Dr. James F. Miller.

### SPECIFIC ALLEGATIONS

25. After Rev. Ewing retired in September 2021, he attempted to access his retirement funds from the Fund. He was, and has been, denied access to his money and has since learned that there may be nothing left.

26. The Fund was making disbursements until summer 2021. Rev. Ewing received a letter from the Fund dated September 14, 2021, notifying him that disbursements would be temporarily paused while the Fund was audited due to a change in leadership.

27. The letter indicated that this audit would take 4-6 weeks.

28. On November 9, 2021, Rev. Ewing received a second letter indicating that the audit was not finished and therefore disbursements could not be made.

29. Because he was not receiving disbursements or a rollover, Rev. Ewing attempted to roll over to Charles Schwab in January 2022 and sent a certified letter to the AMEC Fund requesting that. To date, the Fund has not responded to him or confirmed the roll over.

30. AMEC ministers, like Rev. Ewing, have wrongly been denied access to their retirement funds.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) seeking injunctive and monetary relief for Defendants' misconduct, as alleged herein.

### A. Class Definition

32. Plaintiff brings this action on behalf of the following class:

Class:

All persons residing in the United States who are or were ministers or other employees of the AMEC and who have contributions in the Fund during the Relevant Time Period.

33. The Relevant Time Period is January 1, 2021 through the present.

34. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses under Rule 23(c)(5), or modified in any other way.

6

35. Plaintiff is a member of the Class he seeks to represent.

36. The misconduct challenged herein has been and is continuing in nature.

## B. Rule 23(a) and Rule 23(b)(3) Requirements

### a. Numerosity

37. The proposed Classes are so numerous that joinder of all members is impracticable.

38. Upon information and belief, there are thousands of members of the proposed Class, who are geographically located throughout the United States.

39. The identification of Class members is ascertainable through Defendants' maintained records.

### b. Commonality

40. The prosecution of the claims herein will require the adjudication of numerous questions of law and fact common to the Class. The common questions of law and fact predominate over any questions affecting only individual Class members. The common questions include:

    a. Whether the Defendants breached their fiduciary duties to the ministers

    b. Whether the Defendants were negligent in failing to perform adequate due diligence in relation to the Fund;

    c. Whether and to what extent Plaintiffs were damaged by the Defendants' misconduct challenged herein;

  d.  The appropriate measure of damages to which the Plaintiffs are entitled; and

  e.  Whether the Plaintiffs are entitled to accounting of the Fund.

### c. Typicality

41. All Class members were subject to the same misconduct as alleged herein, and their injuries and claims arise out of the same wrongdoing.

### d. Adequacy of Representation

42. Plaintiff is an adequate representative of the Class.

43. Plaintiff's interests are coextensive with those of the members of the proposed Class. Plaintiff is willing and able to represent the proposed Class fairly and vigorously.

44. Plaintiff has no interests antagonistic to, or in conflict with, the other Class members, and will fairly and adequately protect the interests of the Class

45. Plaintiff has retained counsel highly skilled in complex class litigation who are qualified, experienced, and able to conduct this litigation.

### e. Predominance & Superiority

46. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

47. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

48. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class.

49. AMEC has acted on grounds generally applicable to Plaintiff and the proposed Class by maintaining a standardized practice of requiring ministers to invest a percentage of their paycheck each period into the Fund, and by preventing them from withdrawing monies from the Fund.

50. AMEC has acted or refused to act on grounds generally applicable to Plaintiff and the proposed Class.

   **f. Injunctive Relief**

51. Injunctive relief is also sought in this case. Entitlement to injunctive relief flows directly and automatically from Defendants' breach of their fiduciary duty. In turn, entitlement to injunctive relief forms the factual and legal predicate for the monetary and non-monetary remedies for individual losses caused by Defendants' breach of fiduciary duty and negligent conduct.

**CLAIMS FOR RELIEF**
**COUNT I**
**(BREACH OF FIDUCIARY DUTY)**

52. The foregoing paragraphs are realleged herein.

53. The Defendants had substantial discretion and control over the Plaintiff's and other Class members' retirement funds (including the investment of such funds) and communications with Plaintiff and other Class members.

54. This discretion and control gave rise to a fiduciary duty and duty of care

on the part of each Defendant to Plaintiff and other Class members.

55. The Defendants occupied a superior position over Plaintiff and other Class members with respect to their management and control over Plaintiff's and other Class members retirement funds.

56. The Defendants' superior position necessitated that Plaintiff and other Class members repose trust and confidence in the Defendants to fulfill their duties, and Plaintiff and other Class members reposed such trust by investing in the Funds.

57. As managers and professional advisors of the Fund, Defendants owed fiduciary duties to the Plaintiff and other Class members.

58. The Defendants breached their fiduciary duties to Plaintiff and other Class members by failing to adequately manage the Fund and enable Plaintiff and other Class members to withdraw monies therefrom.

59. Plaintiff and other Class members have been damaged as a proximate result of Defendants' breaches of fiduciary duty and are entitled to damages, and appropriate equitable relief, including accounting.

## COUNT II
## (NEGLIGENCE)

60. The foregoing paragraphs are realleged herein.

61. The Defendants had a special relationship with Plaintiff and other Class members that gave rise to a duty to exercise due care in the management of their assets invested in the Fund.

62. The Defendants knew or should have known that Plaintiff and other Class members were relying on the Defendants to manage the investments entrusted

to the Fund with reasonable care, and Plaintiff and other Class members did reasonably and foreseeably rely on the Defendants to exercise such care by entrusting assets to the Fund.

63. The Defendants failed to exercise due care and thereby injured Plaintiff and other Class members.

64. The Defendants failed to exercise the degree of prudence, caution, and good business practice required of persons who obtain and manage retirement funds.

65. The Defendants also failed to perform adequate due diligence and monitoring with respect to the Fund and its investments.

66. If the Defendants had not been negligent, they would have discovered that Plaintiff and other Class members had lost a substantial portion of their retirement funds.

67. As a proximate and foreseeable result of Defendants' negligence, Plaintiff and other Class members have been damaged.

68. By reason of the foregoing, the Defendants are jointly and severally liable to Plaintiff and other Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray the Court for the following relief:

1. That the Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. That the Court name Plaintiff as Class Representative and his counsel as Class Counsel;

11

3. That the Court enter an order finding that Defendants' conduct was a breach of their fiduciary duties;

4. That the Court enter an order finding that that Defendants conduct was negligent as alleged herein;

5. That the Court award Plaintiff and the other Class members damages and injunctive relief as appropriate, including but not limited to an accounting;

6. That the Court award Plaintiff and the other Class members pre-judgment and post-judgment interest;

7. That the Court award Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses;

8. That all costs of this action be taxed against Defendants; and

9. That the Court award Plaintiff and the Class such other and further relief as this Court may deem just and proper.

10. Plaintiff demands a trial by jury.

11. Plaintiff reserves the right to amend the Complaint.

Dated: March 4, 2022.                Respectfully Submitted,

*/s/ Louis W. Ringger III*
Louis W. Ringger III (TN Bar No. 033674)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S Gay St #1100,
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
bringger@milberg.com

Matthew E. Lee*
Jeremy R. Williams*
Sarah J. Spangenburg*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Tel: 919-600-5000
Fax: 919-600-5035
mlee@milberg.com
jwilliams@milberg.com
sspangenburg@milberg.com

Fred Tromberg*
Law Offices of Fred Tromberg
4925 Beach Boulevard
Jacksvonille, FL 32207
Phone: 904-396-5321
Fax: 904-396-5730
tromberglaw@bellsouth.net

*Attorneys for Plaintiff*

* motion for admission *pro hac vice* forthcoming

13