IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| **IN RE: AME Church Employee** ) | |
| **Retirement Fund Litigation** ) | |
| ) | |
| ) | |
| ) | **MDL Docket** |
| ) | **No. 1:22-md-03035-STA-jay** |
| ) | |
| ) | |

**ORDER**

Before the Court are two motions. First, Plaintiffs filed their Motion to Strike Expert Report and Exclude Expert Testimony of John A. Slavek ("Plaintiffs' Motion"). (Docket Entry [D.E.] 931). Plaintiffs request that this Court strike Slavek's opinions and expert testimony and strike his report from the record. (D.E. 931-1 at 17–18). Symetra filed a response opposing Plaintiffs' Motion. (D.E. 994). Second, Symetra filed its Motion to Exclude Proposed Expert Testimony on Damages by Harris Devor and Martin Dirks ("Symetra's Motion"). (D.E. 936). Symetra requests that this Court exclude Devor and Dirks's proposed damages model ("Model"), including all testimony and opinions regarding damages advanced by them. (D.E. 936-1 at 24). The undersigned magistrate judge was referred these Motions for determination. (D.E. 955). For the reasons provided herein, both Plaintiffs' Motion and Symetra's Motion are **DENIED**.

**I.  RELEVANT BACKGROUND**

Plaintiffs and Symetra have been actively participating in discovery in the case since September 2022. (D.E. 78). On August 4, 2025, the AMEC Defendants filed an unopposed motion

1

to extend the deadline for *Daubert* motions. (D.E. 896; see D.E. 897). The Court granted this motion and set September 11, 2025, as the deadline to file any *Daubert* motion. (D.E. 898).

On September 11, 2025, Plaintiffs and Symetra filed their Motions. The Court summarizes the experts' backgrounds and the Motions in turn.

A.      **Martin Dirks and Harris Devor**

1. Background

Martin Dirks has over thirty years of experience in the investment industry. (D.E. 995-1 at 5). He currently serves as the founder of a consulting firm in Petaluma, California, where he provides equity research and portfolio management services to institutional investors, and teaches an advancement investment course at Golden Gate University in San Francisco, California. (*Id.*). During his thirty years of experience in the investment industry, he has advised hedge funds, companies, and private equity firms, served as a board member for multiple companies, and researched various investment-related issues as an analyst. (*Id.* at 68–70). Dirks has been retained as an expert witness in 14 cases involving pension plans and five cases involving fraud or Ponzi schemes. (*Id.* at 7–8).

Harris Devor is a CPA with over 50 years of experience in applying generally accepted accounting principles, generally accepted auditing standards, and Securities and Exchange Commission requirements. (D.E. 995-2 at 4). He has also provided accounting and auditing services to both large public companies and small, privately owned businesses. (*Id.* at 4, 35–37). Devor has testified as an expert at trial or by deposition in at least 14 cases. (*Id.* at 4, 39–40).

Dirks and Devor provided testimony and expert opinions supporting the Model. Plaintiffs have summarized the Model in their response to Symetra's Motion. (*See* D.E. 995 at 7–8). Dirks established in his testimony that the "Plan's assets were not appropriately invested and did not

meet the standard of care for investing for a retirement plan." (*Id.* at 8). To reach this conclusion, Dirks opined that the Vanguard Balanced Index Fund Admiral Shares ("VBIAX"), an index in which assets are roughly allocated 60% equities and 40% fixed income, should be used as a benchmark to analyze the Plan's returns. (D.E. 995-1 at 61–64). Using the VBIAX as a benchmark, Devor employed a but-for analysis based on "the historical information reflected in Newport's quarterly valuation statements" and other contributions, distributions, and expenses to conclude that "the Plan's balance as of June 30, 2021[,] was $227,740,239 lower than what would have been expected had the Plan achieved the historical results of the VBIAX fund prescribed by Dirks from January 1, 2002[,] to June 30, 2021." (D.E. 955-2 at 6).

  2. Symetra's Motion

  Symetra requests this Court to exclude Martin Dirks and Harris Devor's expert testimony on damages pursuant to Rule 702 of the Federal Rules of Evidence. (D.E. 936). Symetra presents three arguments to support its request. First, Symetra argues that, by relying on the VBIAX benchmark, the Model violates *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). (D.E. 936-1 at 14–18). Symetra asserts that not only is the Model unrelated to Plaintiffs' theory of liability, (*Id.* at 14), but it is also incompatible with any liability theory against it. (*Id.* at 16–17). Additionally, Symetra claims that the VBIAX benchmark contradicts Plaintiffs' allegations that the Plan had a conservative investment strategy. (*Id.* at 17–18).

  Second, Symetra argues that the Model misleads the jury and prejudices Symetra because it does not reliably calculate damages attributable to Symetra's conduct. (*Id.* at 18–20). By calculating only the overall losses to the Plan rather than the damages attributable to Symetra and other defendants, (*id.* at 18), Symetra claims it is prejudiced by the Model because it "produces an

astronomically high and unreliable damages number without giving the jury any ability to estimate what portion of that number should be attributed to Symetra." (*Id.* at 19).

Third, Symetra argues that the Model "grossly overestimates" damages, rendering it unreliable. (*Id.* at 20–23). Symetra points to several flaws in the Model, including the Model's failure to properly account for distributions made from the Plan to its beneficiaries, (*id.* at 21–22), the Model's improper assumption that Harris would be prevented from making all of his investments in Motorskill because the funds were in the VBIAX, (*id.* at 22), and the Model's improper assumption that zero administrative fees would be disbursed back to the AMEC Department of Retirement Services ("DRS"), (*id.* at 22–23).

In response, Plaintiffs make three arguments as to why this Court should not grant Symetra's Motion. First, Plaintiffs argue that Symetra failed to comply with Rule 7.2 of the Western District of Tennessee Local Rules because Symetra did not attach a certificate of consultation nor attempt to contact Plaintiffs' counsel before filing its motion. (D.E. 995 at 9).

Second, Plaintiffs argue that Dirks and Devor are highly qualified. (*Id.* at 10–11). Plaintiffs concede that Symetra has not made any argument to the contrary. (*Id.* at 10).

Third, Plaintiffs argue that the Model is reliable. (*Id.* at 11–25). After explaining the calculations and assumptions propping up the Model, (*id.* at 11–13), Plaintiffs assert that the Model fits with their overall theory of liability. (*Id.* at 13–16). Plaintiffs' theory is that "[t]he misappropriation and management of the Fund also robbed Plaintiffs of reasonable growth and investments returns for almost two decades, making the actual loss more like $250,000,000," (*id.* at 13), "far broader" than Symetra's characterization of their theory. (*Id.* at 14). Because the Model uses the VBIAX as a benchmark for what the Plan would have been worth "had it obtained reasonable growth and investments returns," Plaintiffs argue that the Model fits its damages theory.

4

(*Id.*). Plaintiffs also assert that the Model fits with their liability theory against Symetra, which includes but is not limited to, "a long[-]running conspiracy to, inter alia, misappropriate funds, defraud Plaintiffs, and manage the Fund for their own benefits and to the detriment of the Plaintiffs and the Plan." (*Id.* at 16–17) (quoting *In re AME Church Emp. Ret. Fund Litig.*, No. 1:22-md-03035-STA-jay, 2025 WL 1104985, at *18 (W.D. Tenn. Apr. 14, 2025)). Further, Plaintiffs argue that Plaintiffs' damages theory does not contradict their allegations. (*Id.* at 17–19). Lastly, Plaintiffs argue that the Model appropriately measures damages and is not required to apportion damages between Defendants. (*Id.* at 19–25).

**B.    John A. Slavek**

1. Background

Slavek is a forensic accountant currently serving as the Managing Director in the Investigations, Diligence & Compliance practice in Kroll LLC's Philadelphia office. (D.E. 931-2 at 5; D.E. 994 at 1). He has provided expert witness testimony in 19 different lawsuits. (D.E. 931-2 at 126). Kroll was retained, in part, to "opine on the applicability, accuracy, and internal consistency of the 'but-for' analysis model proposed by Devor in his report, including the related assumptions that impacted the model's results derived from the report of Dirks." (*Id.* at 1). Slavek created an expert report listing five adjustments he would make to the Model for the purposes of calculating damages and testified about that report and his research.

First, Slavek proposes that the VBIAX be replaced by the Symetra Annuities, "reduc[ing] the purported financial loss generated by the Devor model, based on its logic, by more than $164,000,000 from $227,740,239 to $63,097,066." (D.E. 931-2 at 22, 55–57). He reasons that because the Plan's approach to investments was conservative and meant to be placed in the

5

Symetra Annuities rather than the more "speculative" VBIAX, Devor's benchmark was inappropriate. (*Id.* at 17–22).

Second, Slavek proposes that $2.5 million out of the $37 million of Plan assets that were invested in Motorskill and Financial Freedom Funds, LLC ("FFF") be removed from the Total Contributions in the Devor Report, resulting in an additional reduction of $1,107,112 in Expected Investment Gains and reducing the financial loss from $63,097,066 to $59,489,953. (*Id.* at 24). Slavek reasons that because this $2.5 million was invested in Motorskill by Dr. Harris via transfers directly from Regions Bank, unknown to Symetra, and the transfer occurred prior to February 2008, "before there was any indication Symetra ever knew about the existence of either FFF or Motorskill," Symetra "could not have possibly stopped these investments or be responsible for any losses that may have resulted from them." (*Id.* at 23).

Third, Slavek proposes that $15,211,679 of transfers from AMEC to Motorskill and FFF between the fourth quarter of 2008 and the fourth quarter of 2015 is reduced from the Total Contributions in the Devor Report, resulting in an additional reduction of $2,771,136 in Expected Investment Gains and reducing the financial loss from $59,489,953 to $41,507,138. (*Id.* at 25). As in his second adjustment, Mr. Slave posits that Symetra was unaware of these transactions and, thus, could not have stopped them from occurring. (*Id.* at 24–25).

Fourth, Slavek proposes that $740,303 in real estate taxes on Florida real estate is included as an expense, resulting in an additional reduction of $158,184 and reducing the financial loss from $41,507,138 to $40,608,651. (*Id.* at 26). Slavek notes that Devor assumed in his model that the Florida real estate was purchased and, thus, "it is inappropriate to assume that the taxes and fees associated with this real estate would not be paid in the 'but-for' scenario." (*Id.*).

6

Fifth, Slavek proposes that the administrative fees paid by the Plan to DRS be $2,149,869 rather than $0, resulting in an additional reduction of $352,285 in Expected Investment Gains and reducing the financial loss from $40,608,651 to $38,106,498. (*Id.* at 27). He argues that because Plaintiffs previously conceded that the administrative fees should have been 2% of Contributions or, in other words, $2,149,869, this percentage should have been incorporated into Devor's model. (*Id.*).

2. Plaintiffs' Motion

To support their assertion that Slavek's expert report should be stricken and his expert testimony should be excluded, Plaintiffs make three arguments. First, Plaintiffs argue that the Restricted Use Warning, (*see* D.E. 931-2 at 3), in Slavek's report provides grounds for excluding his report. (D.E. 931-1 at 11–12). Plaintiffs note that the Restricted Use Warning reads, in relevant part: "This report does not constitute a recommendation, endorsement, *opinion*, audit or approval of any kind with respect to any transaction, decision or evaluation and should not be relied upon as such in any circumstances." (*Id.* at 11) (quoting D.E. 931-2 at 3). Because Slavek concedes that this language is "a little deceiving, the fact that it's included in the report where I'm giving an opinion," (*id.* at 12), Plaintiffs conclude that the report should be excluded on this independent ground.

Second, Plaintiffs argue that Slavek is not qualified to opine on the facts underlying each of his five adjustments and his criticisms of Dirks's report. (*Id.* at 12–16). Plaintiffs label Slavek "[a] forensic accountant … masquerading as an expert on appropriate retirement plan investments," (*id.* at 16), and point to segments of his testimony where he makes several concessions. (*See id.* at 14) (citing D.E. 931-5 at 6, 13). Plaintiffs request that Slavek's testimony unrelated to forensic accounting be excluded. (*See id.* at 12–13).

7

Third, Plaintiffs argue that the Court should exclude Slavek's opinions on damages solely attributable to Symetra. (*Id.* at 16–17). Plaintiffs claim that Slavek's apportionment of Symetra's share of damages is unhelpful to the jury because it conflicts with Plaintiffs' joint-and-several liability theory. (*Id.*).

Symetra counters Plaintiffs' arguments with three arguments of its own. First, Symetra argues that Slavek is highly qualified to offer his expert opinions. (D.E. 994 at 9–18). Symetra insists that Slavek does not provide expert opinions on investment strategy as he is not an expert in this area, and that his opinions do not require him to be an expert in that area. (*Id.* at 10). Instead, "Slavek relies on his expertise in analyzing damages models, and his analysis of facts from the case and from industry sources" to offer his opinions. (*Id.* at 11). Because Slavek is a rebuttal expert witness, Plaintiffs assert, he does not need to have specialized knowledge in selecting retirement investment plans "[s]o long as [his] background and experience … leaves him 'well-positioned' to assist the jury." (*Id.*) (citation omitted). Additionally, Symetra argues that Slavek's criticism of Dirks and Devor's Model's benchmark are relevant and reliable, making them inappropriate to exclude. (*Id.* at 14–16).

Second, Symetra argues that the Court should not exclude Slavek's opinion that Plaintiffs' Model is flawed because his opinion is relevant and reliable. (*Id.* at 18–21). Symetra makes a smattering of arguments, first claiming that the Model does not match Plaintiffs' theory of harm. (*Id.* at 18). Symetra then explains Slavek's opinion merely remedies the "inappropriate" Model with his adjustments. (*Id.* at 19) (quoting (D.E. 931-2 at 21)). In response to Plaintiffs calling Slavek's opinion "unhelpful," Symetra argues the opposite, pointing to the "academic" nature of Plaintiffs' conspiracy and joint and several liability claims as support. (*Id.*). Symetra next argues that Slavek's adjustments are independent of Plaintiffs' claims. (*Id.* at 19–20). Symetra finally

8

insists that the Model does not "ensure the jury may rely on it regardless of how it disposes of the claims" despite it being required to. (*Id.* at 20).

Third, Symetra argues that the Court should not afford the Plaintiffs' argument regarding the Restricted Use Warning any weight. (*Id.* at 21–22). Symetra asserts that "[t]he presence of a boilerplate disclaimer in a Rule 26 disclosure is not a ground for exclusion under Rule 702," mainly because the Restricted Use Warning "does not bear on any Rule 702 factor" as the warning is not evidence. (*Id.* at 21). Additionally, Symetra asserts that it is not subject to the warning because it is "the one relying on Slavek's opinion." (*Id.* at 22). Finally, Symetra points out that a jury will not be confused by the warning because the report is hearsay that "will not go to the jury." (*Id.*).

## II.  LEGAL STANDARD

The Federal Rules of Evidence require that an expert witness be specially qualified before giving opinion testimony in a case:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Once a party challenges the admissibility of proposed expert testimony, the proponent bears the burden of establishing, by a preponderance of the evidence, that it is admissible." *Ross v. Tipton Cnty.*, No. 2:24-cv-02313-SHL-cgc, 2025 WL 3016861, at *4 (W.D. Tenn. Oct. 28, 2025) (citing Fed. R. Evid. 702 advisory committee's note to the 2000 amendments).

9

The U.S. Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, and its progeny has held that district courts bear a responsibility to serve as a "gatekeeper" in ensuring that scientific, technical, and other specialized knowledge be admitted only if it is both relevant and reliable. 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quotations omitted); *see* Fed. R. Evid. 702 advisory committee's note to the 2000 amendments ("In *Daubert*, the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science."). From *Daubert* and Rule 702, the Sixth Circuit has distilled a test to determine whether expert testimony should be admitted: "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702).

When assessing the reliability of opinion testimony, district courts first ask, "whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.'" *Id.* at 529 (quoting Fed. R. Evid. 702). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal*, 527 F.3d at 529–30. "The party proffering the expert … bears the burden of showing by a preponderance of the evidence that the expert satisfies Rule 702." *In re Onglyza (Saxagliptin) and Kombiglyze (Saxagliptin and Metformin) Prods. Liab. Litig.*, 93 F.4th

339, 348 n.7 (6th Cir. 2024) (citing *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008)).

While courts have broad discretion to exclude proposed expert testimony, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997), "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530 (internal quotation omitted). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note on 2000 amendment) (quotation marks omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("Mere weaknesses in the factual basis of an expert witness's opinion bear on the weight of the evidence rather than on its admissibility."). "Accordingly, Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016) (internal quotation marks omitted).

## III.  ANALYSIS

A.  **Plaintiffs' Motion**

<u>1. Disclaimer Language</u>

Plaintiffs' argument regarding the disclaimer language located in the beginning of Slavek's expert report does not pertain to his qualifications or the reliability and relevance of his testimony. Instead, Plaintiffs challenge the admissibility of Slavek's report generally. The disclaimer language, located at the beginning of Slavek's report titled "Restricted Use Warning," states in relevant part:

> This report was prepared by Kroll [Slavek's employer] at the request of the client to whom it is furnished pursuant to specific terms of engagement. This report, and the information contained herein: i) are strictly confidential and may be privileged; ii) may contain personal data of individuals which is being processed for the purpose set out in the terms of engagement; and, iii) are intended solely for the private and exclusive use of the client only for the purpose set out in the terms of engagement. Any other use of this report is strictly prohibited…. This report does not constitute a recommendation, endorsement, opinion, audit or approval of any kind with respect to any transaction, decision or evaluation should not be relied upon as such in any circumstances.

(D.E. 931-2 at 3). Plaintiff contends that the disclaimer language's last sentence serves as an independent ground for this Court to strike Slavek's report because it may deceive or confuse the jury. Symetra correctly identifies that the disclaimer language is insufficient to exclude Slavek's report. Considering that Slavek is one of Symetra's expert witnesses, it stands to reason that Symetra and Kroll's engagement agreement allows Symetra to utilize Slavek's expert report for this litigation. Further, Slavek's deposition testimony reveals that the disclaimer language does not necessarily apply to this litigation. During his deposition, he remarks, "Unfortunately, these were written because Kroll does a lot of research work related to transactions, making acquisitions, due diligence, and the language is more geared to those types of engagements." (D.E. 931-5 at 27).

The undersigned finds that the disclaimer language is nothing more than boilerplate language inapplicable to Kroll and Symetra's engagement. Thus, Slavek's expert report will not be excluded on this ground.

### 2. Unreliability of non-forensics opinions

Plaintiffs assert that Slavek's opinions relating to the facts underlying each of his five adjustments and his criticisms of Dirks's report are unreliable. (D.E. 931-1 at 12). They cite to a number of cases where "[c]ourts consistently exclude experts who opine on matters outside of their areas of expertise" and conclude that because Slavek conceded that he is not an investment advisor, he is unqualified to give his opinion regarding matters unrelated to forensic accounting. (*Id.* at 13–14).

Indeed, Slavek is not an investment advisor, nor does he have any licenses or certifications related to investing. But "*Daubert* and Rule 702 require only that the expert testimony be derived from inferences based on a scientific method and that those inferences be derived from the facts on the case at hand … not that they know the answer to all the questions a case presents-even to the most fundamental questions." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000).[1] Slavek does not provide expert opinions on the appropriateness of an investment strategy, and he concedes that he is not an expert on investments. Instead, Slavek relies on more than 30 years of experience as a forensic accountant and experience analyzing damages models, data from the real-world, and the facts in this case, such as the Plan's risk portfolio, to determine what adjustments

---

[1] The Court notes that while the Sixth Circuit in *Jahn* focused on the inferences that can be drawn from a scientific method, courts may analyze the reliability of an expert's methodology even if it is not scientific. *See Kumho Tire*, 526 U.S. at 141 ("We conclude that *Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' function obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("In *Daubert*, the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.").

should be made to the Model. His background and experience in practice and as an expert witness leave him well-positioned to "assist the trier of fact" to analyze the Model through his adjustments. *See First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (finding that the district court "correctly reasoned that such unfamiliarity merely affected the weight of his testimony, not its admissibility"); *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 515 (6th Cir. 1998) ("[T]he jury was free to give [an expert's] testimony as much credence as it felt the testimony deserved…."); *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984) ("Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact."). And, as noted by Symetra, "[s]o long as the background and general experience of the expert leaves him 'well-positioned' to assist the jury, '[i]t is of little consequence to questions of admissibility that [the expert] lack[s] expertise in the very specialized area." (D.E. 994 at 11) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir. 2007)). Additionally, the Court finds that he uses data from the record and reliable industry sources to rebut Dirks's and Devor's opinions. Thus, Slavek's opinions related to his five adjustments to the Model will not be excluded.

### 3. Opinions on damages solely attributable to Symetra

Plaintiffs argue that Slavek's opinions regarding damages he believes are attributable to Symetra should be excluded because they are unhelpful to the jury due to the doctrine of joint and several liability. (D.E. 931-1 at 16–17). "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016) (internal quotation marks omitted). Slavek's testimony and opinions identify potential flaws in the Model, such as Slavek's assertions that Symetra was unaware that direct transfers were being made by Regions Bank, and

14

it had no way to assess the propriety and size of the quarterly fees. Slavek's testimony provides context to the jury that, if afforded weight, is helpful to them in determining an appropriate damages award. Therefore, Slavek's forensic opinions on damages solely attributable to Symetra will not be stricken.

**B.     Symetra's Motion**

As for Dirks and Devor, the only *Daubert* issue before this Court is whether the Model and the expert testimony that accompanies it is reliable.[2] Symetra argues that the Model is unreliable for two reasons. First, it argues that the Model does not reliably calculate damages attributable to Symetra's conduct. (D.E. 936-1 at 18–20). Specifically, it asserts that it is prejudiced by the Model because it does not reliably calculate damages attributable to Symetra's conduct, resulting in "astronomically high and unreliable damages number[]s." (*Id.* at 19). On the other hand, Plaintiffs argue that the Model is not required to attribute damages to Symetra because their conspiracy claim provides for joint and several liability, (*id.* at 20), no authority supports Symetra's apportionment argument, (*id.* at 21–22), and allowing the Model will not prevent the jury from finding that the other co-defendants and not Symetra are liable (*id.* at 23).

Second, Symetra argues that the Model is unreliable because it "grossly overestimates damages." (*Id.* at 20–23). Symetra points to courts that routinely exclude expert opinions relying on calculations containing significant error and unsupportable assumptions in arguing that the Model fails to account for large distributions made to Plan participants since 2000. (*Id.* at 21–22).

---

[2] Both parties present an additional argument outside of the purview of this order. First, Symetra argues that the Model violates *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because the VBIAX benchmark is unrelated to any theory of liability. (*See* D.E. 936-1 at 14–18). Because this argument pertains solely to the issue of Federal Rule of Civil Procedure 23(b)(3) class certification, the Court declines to address its argument in this order. Second, Plaintiffs argue that Symetra violated Local Rule 7.2 because it did not attach a certificate of consultation nor attempt to contact Plaintiffs' Counsel before filing its Motion. While the Court *may* deem this failure to attach the certificate as good grounds to deny Symetra's Motion, (*see* L.R. 7.2(a)(1)(B)), the Court declines to do so given that Symetra limited its arguments to the issue of reliability, an issue the Court does not believe the parties would have compromised on after consultation.

Symetra also identifies other "flaws" in the Model, such as the Model assuming that Harris was prevented from making all his investments in Motorskill, (*id.* at 22) and that zero administrative fees should be disbursed back to the DRS (*id.*).

Dirks and Devor are both qualified expert witnesses with decades of experience working in and providing testimony regarding their respective industries. Their qualifications "'provide a foundation for [them] to answer'" the question of what damages Plaintiffs are entitled to "rather than simply assessing their qualifications 'in the abstract.'" *Hill v. Med. Device Bus. Servs., Inc.*, No. 24-5797, 2025 WL 1950300, at *4 (6th Cir. July 16, 2025) (quoting *Daubert*, 509 U.S. at 597). The relevance of their testimony is also undisputed. Their testimony as it pertains to damages and the Model is reliable. While Symetra correctly points out that courts routinely exclude expert opinions erroneously relying on error-ridden calculations, the Model is not an example of such a calculation. Instead, the Model analyzes a world where, but for certain events taking place, including Dr. Harris's investments into Motorskill and FFF and the Plan's investment into Symetra's annuities, and assuming Plaintiffs successfully proved liability, the Plan's expected balance as of June 30, 2021, would be between $217,949,156 to $239,908,052. (*See* D.E. 995-1 at 11).

Symetra disputes the numbers the Model renders the damages, arguing that losses rather than damages are being calculated. (*See* D.E. 936-1 at 18). This is an issue best left to the jury. The issue before the Court is whether Plaintiffs' experts have provided reliable testimony. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008) (citing Fed. R. Evid. 702). Symetra has not argued that the Model or the testimony associated is

16

speculative, lacks a proper foundation because of insufficient facts or data, is the product of reliable principles or methods, or that Dirks or Devor have applied the Model unreliably to the facts of the case. Quite the opposite. Slavek follows the Model's but-for logic in generating his five assumptions and asserting that the "purported financial loss generated" by the Model is $38,106,498 rather than $227,740,239. (*See* D.E. 931-2 at 22, 26–27). As such, the Court finds that the Model rests upon a reliable foundation because the VBIAX it depends on has been used as a benchmark in other analyses, (*see* D.E. 995-1 at 63), and it conducts the industry standard but-for analysis using the facts of the case and real-world data. Therefore, the Court declines to exclude the Model or the testimony associated with it.

## IV.  CONCLUSION

Symetra and Plaintiffs' Motions are **DENIED**.

IT IS SO ORDERED, this, the 17th day of December 2025.

                                    s/Jon A. York
                                    UNITED STATES MAGISTRATE JUDGE

**IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER.** *SEE* **28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**